I concur with the majority's decision in most respects but I must respectfully dissent from the majority's view which states that the offer of employment made by defendant to plaintiff was "make work and not suitable employment."
This case involved an admittedly compensable injury to Plaintiff's knee which occurred on August 25, 2008. On October 21, 2008, right knee arthroscopy with ACL reconstruction and a partial medial meniscectomy was performed. Subsequently, Plaintiff was released to return to work with light duty restrictions on numerous occasions: November 25, 2008 (T Ex. P.76); February 2, 2009 (T Ex. P. 86); March 17, 2009 (T Ex. P. 133); and June 11, 2009 (T Ex. P. 135). Defendants indicated to Plaintiff on several occasions that a position (within his restrictions) was available. Interestingly, Plaintiff returned to work for only a one day period in June of 2009. On that day, Plaintiff was asked to sit at a desk and put vehicle files in chronological order (T P. 46). The next day, Plaintiff called to say that his leg was bothering him and thereafter, never returned. During the period following June 17, 2009, Plaintiff provided no medical absence excuses to his employer (T P. 48). Subsequent to June 17, 2008, no physician took Plaintiff out of work (T P. 29).
Defendants continued to notify Plaintiff that a position was available for him within his restrictions. Per the testimony of Catherine Courtney, an Administrative Officer 1 at Sampson Correctional Institution, Plaintiff could have worked indefinitely in a data entry position, which *Page 13 
included occasional phone answering (T P. 46). And, indeed, Plaintiff was qualified for this position because he had been trained on the computer system utilized for food ordering (T P. 46). When Ms. Courtney was asked if Plaintiff could work permanently in this position, she testified that he could (T P. 58-59).
On July 1, 2009, Plaintiff was released from his doctor's care at maximum medical improvement with a 15% permanent partial disability rating as a result of his compensable injury. At that time, Dr. Barnes indicated that Plaintiff "may return to work, data entry job" (T Ex. P. 89). Although multiple letters were sent to Plaintiff by his employer notifying him that work was available within his work restrictions and that he should return to work, Plaintiff never responded and never returned to work. Per his own testimony, Plaintiff said, ". . . they just send me letters telling me to come back to work. I said, `no'" (T P. 21). Plaintiff was ultimately terminated on October 13, 2008 for failure to return to work — just as any other employee would have been terminated. (T P. 49)
Last, but not least, Plaintiff applied for, and was approved to receive, unemployment benefits on November 1, 2009, a scant three weeks after Plaintiff was terminated for failure to return to work. Collection of unemployment benefits requires that workers be able to work and to be actively seeking work. Interestingly enough, Plaintiff has applied for such positions as used car salesman, truck driver, and even fork lift operator (T Ex. P. 234-235). Plaintiff clearly can work, and to simply ignore a position that he could have, at a minimum, returned to on a trial basis is inappropriate. As such, I strongly believe that Plaintiff is entitled to no Temporary Total Disability payments after October 13, 2008. *Page 14 
 S/___________________ LINDA CHEATHAM COMMISSIONER *Page 1